POTTER v. The MONTICELLO. See Case No. 3,971.

## Case No. 11,333.

### POTTER et al. v. MULLER.

[2 Fish. Pat. Cas. 631; 1 Bond, 601.] [1]

Circuit Court, S. D. Ohio. Dec., 1865.

INJUNCTION IN PATENT CAUSES—CONTEMPT.

Whether a defendant, who has been enjoined from infringing a patent by manufacturing or selling the infringing article, continues to sell in his own right, or as the agent of another, he is equally guilty of a contempt, and is liable to attachment.

This was a motion [by Orlando B. Potter and others], for an attachment. The defendant [Anton Muller] had been enjoined, Potter v. Muller [Case No. 11,334], from infringing the patents of Allen B. Wilson for improvements in sewing machines; the machine in question having a wheel feed, in imitation of the Singer machine. He continued to sell machines after the service of the injunction, alleging that he had disposed of his establishment to his brother, and that he made sales not in his own right but as the mere agent or employee of his brother.

S. S. Fisher, for the motion.
G. E. Pugh, contra.

LEAVITT, District Judge. I will state very briefly the grounds upon which I base my action in this case. Originally there was a bill in the name of O. B. Potter against the defendant, Anton Muller, charging an infringement in the manufacture and sale of sewing machines. The question of the validity of the patent and the novelty of the invention, as well as the question of infringement, were decided by the court on a motion to dissolve the injunction which had been previously ordered. That motion was very fully argued, and the court had no doubt at all that the complainant had fully made out his case, establishing the validity of his patent, and proving the infringement on the part of the defendant. The court, therefore, without hesitation, refused to dissolve the injunction, and made it perpetual.

Subsequent to this decision, but before the present term, there was an application for a rule against this defendant to show cause why he should not be attached for a violation of that injunction; and, upon a return of the rule and hearing, the court adjudged the defendant to pay a small fine of only twenty-five dollars and costs, with the admonition, however, that, if there was a repetition of the offense, he would be visited with a severer penalty. At the present term, the application has been made and granted for an attachment against the defendant for a second violation of the injunction. The defendant has appeared, and has filed answers to the interrogatories that were propounded

[1] [Reported by Samuel S. Fisher, Esq., and by Lewis H. Bond, Esq., and here compiled and reprinted by permission.]

to him. The question now to be decided by the court is, whether he has violated the injunction and incurred a second penalty? The present application for an attachment is predicated upon the affidavit of James W. Harnden, who swears, in substance, that some time in the early part of the present month he went to the manufacturing establishment of this defendant, and, after some conversation and negotiation, the defendant being present with his brother, he made a purchase of one of these sewing machines, which, it is distinctly admitted in the answer of the defendant himself, was a machine in violation of the plaintiff's patent. The affiant, Harnden, states, in substance, that this defendant avowed himself as acting as the agent of his brother, William Muller, stating to him that he sold out the establishment to his hands, and he was acting as agent only. It appeared, however, that in the sale of the machine, the defendant was not only present, but took an active part in the transaction, and although he avowed that his brother, William Muller, was the party interested, it is to be remarked that it does not appear that there was any bona fide sale or transfer of this manufacturing establishment by the defendant to his brother. Indeed, it appears from his own statement that if there was any sale or transfer, it was entirely without consideration; that his brother paid nothing for the manufactory, or for the use of the tools. Now, the only question is, whether this is a bona fide transaction, or whether it is a mere subterfuge, to evade responsibility and liability under the injunction that had been granted. One of the two propositions is undoubtedly true—either that this defendant was still the legal owner of that establishment, or, if he was not, he was the agent of the parties who were the owners. Harnden, in his affidavit, states that he avowed himself to be acting as the agent. In either case, if there has been a sale of the machine, that is an infringement of the patent and in violation of the injunction. This defendant is clearly liable whether he was, in fact, the owner of the establishment, or whether he acted as the agent of another party, as the injunction, in its terms, applies to and reaches the defendant himself, acting in any capacity, and all agents, employees, or servants.

I have no doubt at all that this pretended arrangement between this defendant and his brother was simply evasive, and, I must think, a very clumsy subterfuge to evade liability. If he was the owner of the concern (which appears most probable to the court, notwithstanding the pretended transfer), then he was liable. If he was acting as the agent of another party, he was liable also.

I am very clear, therefore, from the facts as they are before the court, that this party has violated the injunction, and it has been done under circumstances of aggravation. When this party was before the court at a previous term he was admonished by the court that he incurred great liability in contemning the process and authority of the court; but there was some reason, at that time, to suppose that the defendant might have acted under some misapprehension in regard to the issuing of the injunction and its effect and operation upon him, and as he was a foreigner, the court, inclined to be as lenient as possible under the circumstances, adjudged a merely nominal fine against him.

It now appears that he has again violated this injunction without any excuse, and, certainly, with a full knowledge not only of its existence, but also of its effect and operation; and, under the circumstances of the case, it appears to be the imperative duty of the court to visit this party with a more severe punishment than was adjudged to him on the previous occasion.

I do not know what may be the views of the defendant in regard to his liability to obey the laws and respect the authority of the government. It is possible that, being a foreigner, and having come from a government of despotism to a land of freedom, liberty, and equality, he supposes that our institutions guarantee to him the right of doing as he pleases, without reference to law and the rights of others. That may be his conception of true liberty; but it is a great mistake, and foreigners should know that it is against the theory, and would lead to the utter destruction and overthrow of our institutions, if it were recognized and sanctioned. True liberty consists, undoubtedly, in obedience to the law; and there is no way by which the rights of individuals or the peace and good order of the community can be maintained, except by due respect to the authority of the law and the government of the country.

This party must know that he can not, and ought not, by any subterfuge, evade the liabilities which he has incurred under the orders and decisions of this court. It is not because the defendant owes any peculiar respect or reverence to the individual who occupies this place, but because he owes respect, reverence, and obedience to the authorities of the country and the laws of the land.

The defendant is adjudged to pay a fine of four hundred dollars and the costs of this proceeding, and to stand committed until the fines and costs are paid, or the court shall otherwise order.

[For other cases involving this patent, see note to Potter v. Whitney, Case No. 11,341.]